NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 66

No. 24-AP-059

| Jennifer Knapp (Dasler) | Supreme Court |
| | |
| v. | On Appeal from |
| | Superior Court, Windsor Unit, |
| Timothy Dasler | Family Division |
| | |
| | September Term, 2025 |

Lisa Warren, J.

Timothy Dasler, Pro Se, Orford, New Hampshire, Plaintiff-Appellant.

John B. Loftus, III, Norwich, for Defendant-Appellee.


PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Morrissey, Supr. J.,
Specially Assigned

¶ 1. **EATON, J.** Timothy Dasler, self-represented, appeals from the trial court's award of attorney's fees and costs to Jennifer Knapp, his former spouse, under the abusive-litigation statute, 15 V.S.A. §§ 1181-1185. We affirm.

¶ 2. The parties divorced in 2018. In a December 2023 order, the trial court determined that Mr. Dasler engaged in abusive litigation under 15 V.S.A. § 1181 toward Ms. Knapp. In this Court's affirmance of that decision, we described the basis for the trial court's decision as follows. Mr. Dasler "continually attempted to relitigate prior final court orders" and "moved for reconsideration of nearly every order issued by the court," and "virtually all of his motions [were] denied for failure to present new facts or legal arguments." Knapp v. Dasler, 2024 VT 65, ¶ 16, __ Vt. __, 331 A.3d 1011. Mr. Dasler also "made 'horrible' unsubstantiated allegations against

[Ms. Knapp] in his filings," filed "numerous appeals to this Court [that] were unsuccessful," and "initiated litigation in six different courts over issues that were the same or similar to those raised" before. Id. ¶ 28. The trial court determined that Mr. Dasler's "repetitive filings were made for the purpose of abusing, harassing, or intimidating [Ms. Knapp]," and it "restricted [him] from filing motions or otherwise engaging in litigation against [Ms. Knapp]" unless certain conditions were met. Id. ¶ 16.

¶ 3. In connection with her request for an abusive-litigation order, Ms. Knapp sought $12,430 in attorney's fees and costs under 15 V.S.A. § 1184(b)(1). Pursuant to that provision, a court may "award[] the other party reasonable attorney's fees and costs of responding to the abusive litigation, including the cost of seeking the order restricting abusive litigation." Id. Ms. Knapp submitted her itemized legal fees and an affidavit in support of her request. Mr. Dasler opposed the motion, and submitted a statement of his income, expenses, and assets. He argued in relevant part that some fees were unrelated to the instant litigation, the fees were excessive, and he could not afford to pay them.

¶ 4. In a January 2024 order, the trial court awarded Ms. Knapp $5970 in attorney's fees and costs. The court reviewed different ways in which parties could recover attorney's fees, including pursuant to statute, contract, or as "suit money" in a divorce proceeding recoverable "where justice and equity so indicate." Nevitt v. Nevitt, 155 Vt. 391, 399, 584 A.2d 1134, 1139 (1990); see also DJ Painting, Inc. v. Baraw Enters., Inc., 172 Vt. 239, 246, 776 A.2d 413, 419 (2001) (recognizing that Vermont courts apply the "American Rule," under which parties "bear their own attorneys' fees absent a statutory or contractual exception," but acknowledging that courts may also "use their equity power to award fees as the needs of justice dictate . . . in exceptional cases and for dominating reasons of justice" (quotations omitted)). Here, Ms. Knapp sought attorney's fees pursuant to a specific statutory provision.

2

¶ 5. To determine a reasonable fee award under the statute, the court explained that it must begin with the "lodestar figure" and then adjust this amount "depending on the circumstances of the case, including, among other factors, the novelty of the legal issue, the experience of the attorney, and the results obtained in the litigation." Evans v. Cote, 2014 VT 104, ¶ 23, 197 Vt. 523, 107 A.3d 911 (quotation omitted); see also L'Esperance v. Benware, 2003 VT 43, ¶ 22, 175 Vt. 292, 830 A.2d 675 (defining "lodestar figure" as "the number of hours reasonably expended on the case multiplied by a reasonable hourly rate"). The court limited its award to the legal fees and costs Ms. Knapp incurred in connection with her motion for an order restricting abusive litigation and Mr. Dasler's renewed motions for contempt, dismissal, and sanctions, all of which were addressed at a November 2023 hearing. It found that Ms. Knapp's attorneys spent a reasonable amount of time on these matters and charged reasonable rates. The attorneys' fees totaled $5940, which the court used as the lodestar figure.

¶ 6. The court found no basis to deviate upward or downward from this lodestar amount. While the issues were not factually complex, Ms. Knapp sought relief under a new abusive-litigation statute, which required her attorneys to thoroughly review the parties' litigation history spanning back years. Ms. Knapp's attorneys were experienced. Ms. Knapp achieved a positive result as the court granted her motion for an order restricting abusive litigation and denied Mr. Dasler's motions. The court acknowledged the financial statement that Mr. Dasler submitted but concluded that it did not warrant a downward departure from the lodestar amount. The court thus awarded $5940 in fees and $30 in costs to Ms. Knapp.

¶ 7. Mr. Dasler moved for reconsideration, arguing in relevant part that the court failed to make individualized findings of fact regarding his ability to pay. He cited cases where attorney's fees were awarded in conjunction with a final divorce order in support of his argument. The court denied the motion and distinguished the cases cited by Mr. Dasler. It explained that in those divorce cases, attorney's fees were recoverable as "suit money" under 15 V.S.A. §§ 606-607 and

3

the "primary consideration in awarding [such] attorney's fees is the ability of the supporting party to pay and the financial needs of the party receiving the award." Turner v. Turner, 2004 VT 5, ¶ 9, 176 Vt. 588, 844 A.2d 764 (mem.); see also Downs v. Downs, 159 Vt. 467, 471, 621 A.2d 229, 231 (1993) (recognizing that "considerations governing the award of 'suit money' are different from those factors governing the award of attorney's fees in nondivorce cases"). In contrast, this case was post-judgment by several years, and it involved an award of attorney's fees pursuant to 15 V.S.A. § 1184(b)(1). The standard for determining such fees was reasonableness, which did not require individualized findings as to Mr. Dasler's ability to pay. See id. (stating court may award "reasonable" attorney's fees). The court thus denied Mr. Dasler's motion, and this appeal followed.

¶ 8. On appeal, Mr. Dasler asserts that the court was required to consider the parties' financial needs in determining its attorney's-fee award and it erred by failing to do so. According to Mr. Dasler, this analysis is required for awarding attorney's fees in divorce cases and for imposing sanctions under Vermont Rule of Civil Procedure 11, and it therefore must also be required for attorney's-fee awards under 15 V.S.A. § 1184. Mr. Dasler raises numerous additional arguments resting on the premise that the court was obligated to consider the parties' financial circumstances in making its award and failed to do so.[1]

---

[1] Mr. Dasler also asserts that requiring a court to evaluate an abusive litigant's ability to pay attorney's fees "align[s] . . . with the principles regarding specific performance in bankruptcy and contract law." There is no contractual attorney's-fee provision at issue here, and neither party sought specific performance of a contract. The court did not rely on its "equity power to award fees as the needs of justice dictate," DJ Painting, Inc., 172 Vt. at 246, 776 A.2d at 419 (quotation omitted), as Mr. Dasler appears to suggest. Ms. Knapp requested and was awarded attorney's fees pursuant to statute, and the contract and bankruptcy cases cited by Mr. Dasler are inapposite. See, e.g., In re MJK Clearing, Inc., 286 B.R. 109, 124 (Bankr. D. Minn. 2002) (considering specific-performance argument, and explaining that "[s]pecific performance is an equitable remedy which compels performance of a contract"); Hunt Dev. Grp., L.P. v. Dick Corp., No. EP-09-CA-313-FM, 2010 WL 11601053, at *5 (W.D. Tex. Dec. 8, 2010) (discussing whether, under Texas law, attorney's fees are recoverable pursuant to equitable claim of unjust enrichment).

¶ 9. When, as here, attorney's fees are awarded pursuant to a statute, the amount of the fee award, which depends on the facts of the case, is within the court's discretion. Kwon v. Eaton, 2010 VT 73, ¶ 13, 188 Vt. 623, 8 A.3d 1043 (mem.). Mr. Dasler fails to show an abuse of discretion here.

¶ 10. The court's authority to award attorney fees under 15 V.S.A. § 1184(b)(1) is part of a statutory scheme that is "clearly intended to protect parties from harassment in the form of frivolous litigation by former partners or abusers." Knapp, 2024 VT 65, ¶ 29 n.4. Mr. Dasler engaged in abusive litigation toward Ms. Knapp and made "repetitive filings . . . for the purpose of abusing, harassing, or intimidating" her. Id. ¶ 16. Under such circumstances, the statute plainly authorizes the court to award "reasonable attorney's fees and costs of responding to the abusive litigation, including the cost of seeking the order restricting abusive litigation." 15 V.S.A. § 1184(b)(1).

¶ 11. The court engaged in an appropriate analysis to determine a reasonable fee award. It began with the lodestar figure and considered if the circumstances of the case warranted an adjustment. See Cote, 2014 VT 104, ¶ 23. In reaching its conclusion, the court considered, among other things, the financial statement Mr. Dasler submitted and his assertion that he could not afford to pay attorney's fees. It rejected this argument and determined, based on its review of the record, that no adjustment was warranted. The court was not required to make specific findings about Mr. Dasler's finances in support of this conclusion. See New England Power Co. v. Town of Barnet, 134 Vt. 498, 503, 367 A.2d 1363, 1366 (1976) ("The purpose of findings is to make a clear statement to the parties, and to this Court if appeal is taken, of what was decided and how the decision was reached." (quotation omitted)). While Mr. Dasler believes his financial circumstances warranted a different result, the court acted within its discretion in concluding otherwise. See, e.g., Meyncke v. Meyncke, 2009 VT 84, ¶ 15, 186 Vt. 571, 980 A.2d 799 (mem.)

5

(explaining that arguments which amount to nothing more than disagreement with court's reasoning and conclusion do not make out case for abuse of discretion).[2]

¶ 12.    Mr. Dasler cites cases awarding attorney's fees in conjunction with a final divorce order and those involving Federal Rule of Civil Procedure 11 in support of his assertion that the court was required to consider the parties' financial circumstances.  As explained by the trial court, awards of "suit money" in divorce cases are unique in their focus on "the ability of the supporting party to pay and the financial needs of the party receiving the award."  Nevitt v. Nevitt, 155 Vt. 391, 399, 584 A.2d 1134, 1139 (1990).  The court did not award attorney's fees to Ms. Knapp as "suit money" and the divorce cases cited are distinguishable for that reason.

¶ 13.    In Knapp, we noted that Vermont Rule of Civil Procedure 11, which was "in effect at all times during this litigation," "contains similar restrictions on [Mr. Dasler's] litigation conduct" to that set forth in the abusive-litigation statute, thereby placing Mr. Dasler "on constructive notice that harassing or frivolous filings could lead to sanctions," including prefiling restrictions.  2024 VT 65, ¶ 26.  While the imposition of sanctions under Rule 11 share many similarities with attorney's-fee awards under 15 V.S.A. § 1184, there are also differences.  "Rule 11 sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management," with "[d]eterrence" as "the primary goal of the sanctions."  White v. Gen. Motors Corp., 908 F.2d 675, 683 (10th Cir. 1990).  To that end, Rule 11 specifically provides that "[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."  V.R.C.P. 11(c)(2).  It allows, "where warranted for effective deterrence, an

---

[2]    There is no support in the statutory language or structure for Mr. Dasler's assertion that the court's focus in awarding attorney's fees for abusive litigation should have been the "best interests of the [parties'] child."  The focus of the abusive-litigation statute is protecting certain individuals from abuse and harassment.

order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation." Id.

¶ 14.   Abusive-litigation statutes present a more "victim-centered" approach, Hamilton v. Boise Cascade Express, 519 F.3d 1197, 1205 (10th Cir. 2008), seeking to protect victims from continuing to be abused, harassed, threatened, or intimidated by their abuser through the litigation process. Vermont's statute expressly allows the court to impose conditions it considers "necessary and appropriate," including awarding a victim "reasonable attorney's fees and costs of responding to the abusive litigation, including the cost of seeking the order restricting abusive litigation." 15 V.S.A. § 1184(b)(1). Section 1184 does not include the type of "parsimony provision" found in Rule 11, Hamilton, 519 F.3d at 1205, and is therefore not limited to a sanction that "is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." V.R.C.P. 11(c)(2).

¶ 15.   We need not decide here if a court must consider a party's ability to pay before imposing sanctions under Rule 11, as Mr. Dasler asserts. Although the Reporter's Notes to Rule 11 suggest that the trial court may consider ability to pay, this Court has not considered the question of whether this is a mandatory or permissive consideration. Reporter's Notes—1996 Amendment, V.R.C.P. 11 (recognizing that trial court "has significant discretion in imposing a sanction [under Rule 11] tailored to the conduct in question and may consider [various] factors," including "what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case" (emphasis added)); Filter Equip. Co. v. Int'l Bus. Machs. Corp., 142 Vt. 499, 503, 458 A.2d 1091, 1093 (1983) (explaining that Reporter's Notes are "not binding upon the Court," but they "have a persuasive effect similar to that of legislative history")..   Even assuming Rule 11 requires this assessment, and that this somehow translates to a requirement implicitly present in 15 V.S.A. § 1184(b)(1), the trial court did consider Mr. Dasler's financial circumstances in reaching its decision. Mr. Dasler's claim of error is without merit.

7

¶ 16. Mr. Dasler next asserts that 15 V.S.A. § 1184 is being retroactively applied to him because prior law required consideration of his ability to pay and he had no notice that the court would fail to consider his financial circumstances here. As the court did consider his ability to pay, we reject this argument.

¶ 17. In a related vein, Mr. Dasler argues that the fee award "violates constitutional and fundamental fairness by imposing a new financial penalty for litigation conduct that predated the enactment of the statute." We rejected the basis of this argument in Mr. Dasler's prior appeal, and it is not subject to collateral attack here. See Town of Pawlet v. Banyai, 2024 VT 13, ¶ 8, 219 Vt. 90, 94, 315 A.3d 1008 ("It is well settled that a court's final judgments are conclusive upon parties and cannot be collaterally attacked." (quotation omitted)). We previously held that "[t]he abusive-litigation statute was not applied retrospectively" because the statute "did not affect [Mr. Dasler's] motions or filings, or the court's orders responding to those filings, that were entered prior to the effective date of the statute." Knapp, 2024 VT 65, ¶ 22. As we explained, "[t]hose filings and rulings remain unchanged, and the order did not penalize [Mr. Dasler] for his earlier filings"; it "affected only motions that [he] filed after the statute was enacted—his October 2023 motion to dismiss and his November 2023 motion for sanctions—and filings [he made] . . . thereafter." Id.

¶ 18. We have also already considered and rejected Mr. Dasler's argument that "[s]anctions were previously denied on multiple occasions, and no new litigation conduct post-dating those denials was identified as abusive," and his assertion that the court failed to "identify any specific findings post-dating the enactment of § 1184 as abusive." See Knapp, 2024 VT 65, ¶¶ 22, 25. We thus do not revisit these arguments.

¶ 19. Mr. Dasler next argues, apparently for the first time on appeal, that the court's attorney's-fee award "create[d] a barrier to fundamental access to justice" and he "should not be penalized for inadequate self-representation." Putting aside questions of preservation, Mr. Dasler has no right to use the justice system to abuse, harass, or intimidate Ms. Knapp, as the Legislature

8

made clear in enacting the abusive-litigation statute. See also <u>Zorn v. Smith</u>, 2011 VT 10, ¶ 16, 189 Vt. 219, 19 A.3d 112 (recognizing that "right of access to justice" "is not unlimited," and "litigants are not free to abuse the courts by inundating them with frivolous suits which burden the administration of the courts for no useful purpose" (quotation omitted)). His financial status does not give him the right to harass Ms. Knapp without consequence. The Legislature has determined that victims of litigation harassment and abuse, like Ms. Knapp, can seek to recover the costs of responding to this type of litigation. As another court observed, "[d]eterring suits without reasonable foundation . . . is not subserved by creating an exception for frivolous suits by the impecunious." <u>Alizadeh v. Safeway Stores, Inc.</u>, 910 F.2d 234, 238 (5th Cir. 1990).

¶ 20.    The court acted within its discretion and consistently with the statute in awarding Ms. Knapp her "reasonable attorney's fees and costs of responding to the abusive litigation, including the cost of seeking the order restricting abusive litigation." 15 V.S.A. § 1184(b). We have considered all the arguments discernable in Mr. Dasler's brief and find no error.

<u>Affirmed</u>.

FOR THE COURT:

_____

Associate Justice